# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **LATIA HARRIS** *and* **OCTAVIA HARRIS**,<br><br>*Plaintiffs*,<br><br>v.<br><br>**BLUE RIDGE HEALTH SERVICES, INC.**,<br><br>*Defendant*. | **CASE NO.: 1:18-CV-114** |

## COMPLAINT AND REQUEST FOR JURY TRIAL

**NOW COMES** the Plaintiffs, Latia Harris ("Latia") and Octavia Harris ("Octavia"), and complaining of the defendant, Blue Ridge Health Services, Inc. ("BRHS"), and alleges the following to be true:

### INTRODUCTION

1  This action stems from BRHS's termination of Latia and Octavia Harris in retaliation for reporting and seeking to rectify regulatory noncompliance and overtime law violations, as well as discrimination based on sex.

2  Each paragraph of this complaint incorporates all others, and all exhibits are incorporated as if fully laid out herein.

-1-

## PARTIES, JURISDICTION, AND VENUE

**3** Latia Harris is a resident of Guilford County, North Carolina, and is neither a minor nor incompetent.

**4** Octavia Harris is a resident of Guilford County, North Carolina, and is neither a minor nor incompetent.

**5** Defendant Blue Ridge Health Services, Inc. is a North Carolina Corporation with its principal place of business in Guilford County, North Carolina.

**6** This Court has subject-matter jurisdiction over this action pursuant to any/all of the following:

    **6.1** 28 U.S.C. § 1331, as the action arises out of the 31 U.S.C. § 3729 et seq., 29 U.S.C. § 201 et seq., and 42 U.S.C. § 2000e et seq.;

    **6.2** With regard to Plaintiff's state law claims, 28 U.S.C. § 1367(a), as the state law claims form part of the same case or controversy as those giving rise to original jurisdiction.

**7** This Court has personal jurisdiction over all parties to this matter pursuant to any/all of the following:

    **7.1** Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, which requires the federal district courts to use the rules for personal jurisdiction of the state where the district court is located;

 **7.2** N.C. Gen. Stat. § 1-75.4(1)(c) and (d), as Blue Ridge Health Services, Inc. was a domestic corporation engaged in substantial business activity within this state at the time service of process was made upon it.

 **7.3** N.C. Gen. Stat. § 1-75.4(3), as this action arises from a local act or omission causing injury to Latia and Octavia Harris's person or property.

**8** Venue is proper in this Court pursuant to any/all of the following:

 **8.1** 28 U.S.C. § 1391(b)(1), as all Defendants are residents of North Carolina and at least one defendant is a resident of the Middle District of North Carolina;

 **8.2** 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this action occurred in the Middle District of North Carolina.

## STATEMENT OF THE FACTS

**9** Latia Harris began working for Blue Ridge Health Services, Inc. on December 14, 2013, as a Habilitation Technician.

**10** In the summer of 2015, BRHS was having payroll problems. BRHS asked Octavia Harris if she would be interested in working for them as a payroll specialist.

11      Octavia interviewed with Lynn Taylor ("Taylor") on August 17, 2015. During that interview, Taylor expressed that the owner, Lubna Reece ("Reece"), was not comfortable with gay people and it would be best to use a "don't ask, don't tell" system.

12      BRHS hired Octavia on August 29, 2015.

13      About a month after Octavia was hired, people started friending Tia and Octavia on Facebook. Taylor suggested that they not accept requests from people who are also friends with Reece in order to avoid a confrontation about their sexual orientation.

14      In December 2015, BRHS's accountant, Rhonda Prentez ("Prentez"), called Octavia in the office and asked if she and Tia were sisters because they had the same last name and address. When Octavia explained that they were married, Prentez became upset and wanted to know if Reece knew because she did not think Reece would approve.

15      Prentez spoke to Taylor, who asked her not to tell Reece, with whom she frequently spoke.

16      In December 2015, the former HR Director, Kirsten Olsten-Keyser put in her two weeks' notice and Octavia began the process of taking over as HR Director.

17      During her transition, Octavia discovered that no BRHS employee had completed the orientation required by CARF. Instead, the former HR Director had made false certifications and submitted those to CARF in October 2015 so that BRHS could keep its certification.

18      Octavia also discovered that the bookkeeping for BRHS's required Medicaid certifications were falsified.

19      On January 11, 2016, Octavia notified Taylor, the Agency Director and Latia and Octavia's direct supervisor. Taylor told Octavia that she would have to start from scratch to get everyone back into compliance.

20      Octavia began regularly calling Sandhills Center, the Local Management Entity-Managed Care Organization above BRHS, to talk about BRHS's compliance issues and how to fix them.

21      From then on, Octavia and Latia brought up BRHS's compliance issues with Taylor every week at the Thursday staff meetings.

22      Whenever Latia or Octavia brought up BRHS's compliance issues with Taylor, she would become verbally abusive and resistant to rectifying noncompliance.

23      On January 8, 2016, Octavia notified Taylor that BRHS should be paying employees for training and that they needed to pay for training to be in compliance with law. Octavia also reminded Taylor that the training was necessary for BRHS to get back into compliance with CARF and Medicaid. Octavia also notified Taylor that BRHS needed to be paying overtime to all employees.

24      Taylor responded that she would call and ask Reece but that it was "not going to happen."

25	Octavia also informed Taylor on January 8, 2016, that care workers Lashekia Grimes, Jessika Moore, Faye Davis, Amanda Rodriguez, and Manastella Merrit did not have a high school diploma on file in violation of Medicaid requirements.

26	In February 2016, Taylor announced that Latia would be promoted to a Qualified Professional. However, at that time, Latia was already doing Qualified Professional work, even though she was not properly trained.

27	Latia explained to Taylor every week at the Thursday staff meeting that she was no properly trained or certified to do the tasks she was assigned.

28	Latia was promised $13 per hour for office work, $12 per hour for rehabilitation technician work, and $10.50 per hour for personal care and respite work.

29	Taylor continuously put off training Latia, so that Latia did work for which she was not certified.

30	Taylor also continued to make Latia work overtime every week without paying her the proper overtime rate.

31	Around July 11, 2016, Octavia discovered that under Medicaid, Qualified Professionals must have NCI, First Aid, CPR, Bloodborne Pathogens, OSHA, Cultural diversity, and HIPAA training or they cannot sign off on services provided.

32	Octavia also discovered that Taylor, who was the Qualified Professional over BRHS, had been expired on all her credentials for the past four years.

33    Octavia notified Taylor, but she did not do anything to remedy her noncompliance and told Octavia to mind her own business.

34    On July 22, 2016, Octavia and Latia notified Reece and Taylor at a staff meeting that BRHS was extremely behind in making sure the amounts it billed Medicaid were correct, that Taylor was not doing enough to bring the company into Medicaid compliance, that Medicaid goal sheets were not being updated, that client hours were not being updated, that qualifications were being falsified because Taylor never looked at documentation, and that Taylor had not been properly certified for 4 years.

35    Octavia and Latia also brought up BRHS's failure to provide overtime for any of its employees, including Octavia and Latia.

36    Around the time of that visit, Reece discovered that Octavia and Tia were married.

37    Reece told Octavia after her afternoon prayer that her religion does not hate anyone, but that same sex marriage is not in God's will. Reece said she would pray about it and hope it all worked out.

38    Later that day, Reece gave Octavia a copy of the Quran and told her that if she wanted to know more about what God's true will was and lead a more God-like life, she could read it.

39   When Octavia told Latia about this conversation, Latia started looking for another job because they were afraid that Reece was going to fire them now that she knew they were gay.

40   On July 28, 2016, Octavia and Latia notified Reece, in Taylor's absence, that Taylor had been creating a hostile atmosphere at work because she was not following procedures, but instead was arbitrarily deciding employee assignments and client treatments based on their social status and whether they had children out of wedlock.

41   Later that day, Taylor brought Octavia into her office and told her that she would not forgive her for telling Reece about their noncompliance issues and that the best thing Octavia could do would be to find another job.

42   On August 10, 2016, Octavia and Latia were less than 15 minutes late to work because there was a train at a crossing on their commute. When they arrived, Taylor began berating them and yelling in their faces, even though BRHS's policies state that an employee is not late until 30 minutes after the hour and there was nothing they could have done to prevented being late that day.

43   Prior to August 2016, BRHS had not been paying overtime as required by law. Octavia and Latia had lobbied Taylor on several occasions to start paying overtime.

44   On August 29, 2016, Reece and Taylor decided to start paying all employees $12 per hour for overtime, even if that was less than the employee's base pay rate.

45     Octavia called the Labor Board and confirmed that this was not legal and that BRHS needed to be paying 1.5 times the employee's base pay rate.

46     Octavia informed Taylor, but she was not receptive.

47     On October 12, 2016, Octavia spoke with Reece because Taylor had required her to stay late to check compliance documentation on which the company was over a year behind. Reece told Octavia that it was not her job and that only a Qualified Professional should be doing that paperwork. Octavia is not a Qualified Professional, so she should not have been responsible for that paperwork.

48     On October 24, 2016, Octavia found discrepancies in the number of hours being used in one of BRHS's client homes. Taylor had not been allowing the client's parent to use the hours that the Medicaid waiver program allowed her.

49     Octavia called Sandhills Center and spoke to Dollie Terrell, who said that hours should not be restricted.

50     Octavia told Taylor about her conversation with Sandhills Center and that it was illegal to deny the parent provider hours, but this only angered Taylor.

51     On October 26, 2016, Taylor called Octavia into her office and informed her that the company was going to pay out overtime at $8 per hour times 1.5 and that she needed to get on board or find another job.

52     Octavia again informed Taylor that this was against the law and BRHS needed to pay its employees the overtime they were due.

53      Taylor responded that they would only pay $12 per hour of overtime for all employees and that anyone who did not like it could "kick rocks."

54      Octavia again protested, saying that she would not be a part of anything that was illegal.

55      On October 27, 2016, Latia put a paper request in Taylor's mailbox for herself and Octavia so that they could go visit their mothers. The request was to leave at 1:00PM on November 4, 2016. This was a Friday, so they would only be missing a few hours of work each. Latia and Octavia also requested off on the online office calendar so that everyone could see it.

56      On November 1, 2016, Octavia received payroll for a parent caregiver who was requesting money that was in her Medicaid ISP plan.

57      Octavia gave the request to Taylor, who responded that the parent did not need any extra hours from Medicaid because their family had property and inheritance.

58      Octavia did not think this was right, so she contacted Dollie Terrell at Sandhills Center, who told her that Taylor was not allowed to decide how many hours a home gets and that it would be fraud to deny hours.

59      Octavia told Taylor about this conversation, which angered Taylor.

60      On November 3, 2016, Octavia reminded Taylor about her and Latia's request off. Taylor told both Latia and Octavia that they were approved and that she did not know where the papers were, but they were all set.

61     On November 4, 2016, when Latia and Octavia started packing to leave at 1:00PM, Taylor came over to them and told them they could not take off together. Octavia reminded her that they had asked off weeks ago and spoken to her about this day multiple times since.

62     Octavia called Reece, who confirmed that their time off was approved and mentioned that she was unsure why there was an issue.

63     However, in this same conversation, Reese mentioned that she was frustrated with the tension in BRHS's office and expressed that if she had it her way she never would have hired Latia and Octavia in the first place because she disapproved of their being gay.

64     At around 5:45PM that evening, Reece called back and said that they could both pick up their checks that Wednesday because they were fired.

65     When they picked up their checks, Latia noticed that they had still not paid her for the overtime that was due.

66     After their termination, Sandhills Center conducted a review of BRHS and determined that BRHS was in fact out of compliance. The review found that BRHS employees were not properly trained or drug tested. It also found that Quarterly Summaries had not been complete, that BRHS billed for services not rendered, and that BRHS did not have a Rights Committee as required by Medicaid.

67	The EEOC issued a 90-day Notice of Right to Sue letter for Latia on November 28, 2017.

68	The EEOC issued a 90-day Notice of Right to Sue letter for Octavia on November 30, 2017.

69	The North Carolina Department of Labor issued a 90-day Notice of Right to Sue letter on February 2, 2018.

70	The North Carolina Department of Labor issued a 90-day Notice of Right to Sue letter on February 2, 2018.

## FIRST CAUSE OF ACTION
### Retaliation
*The False Claims Act, 31 U.S.C. § 3730(h)(1)*

71	Latia and Octavia engaged in a protected activity when they reported BRHS's noncompliance with Medicaid requirements to Taylor, Reece, and Sandhills Center to stop a violation of the False Claims Act.

72	BRHS was aware that Latia and Octavia were reporting its noncompliance.

73	BRHS terminated Latia and Octavia because they reported its noncompliance.

## SECOND CAUSE OF ACTION
### Retaliation
*North Carolina Medical Assistance Provider False Claims Act, N.C. Gen. Stat. § 108A-70.15*

74    Latia and Octavia engaged in a protected activity when they reported BRHS's noncompliance with Medicaid requirements to Taylor, Reece, and Sandhills Center to stop a violation of the NC False Claims Act.

75    BRHS was aware that Latia and Octavia were reporting its noncompliance.

76    BRHS terminated Latia and Octavia because they reported its noncompliance.

## THIRD CAUSE OF ACTION
### Retaliation
*Fair Labor Standards Act, 29 U.S.C. § 201 et. seq.*

77    Latia and Octavia engaged in a protected activity when they complained about BRHS's overtime practices to Taylor and Reece.

78    BRHS was aware that Latia and Octavia complained to about BRHS's overtime practices.

79    BRHS terminated Latia and Octavia because they complained about BRHS's overtime practices.

## FOURTH CAUSE OF ACTION
### Retaliation
*North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. §95-240 et. seq.*

80    Latia and Octavia engaged in a protected activity when they complained about BRHS's overtime practices to Taylor and Reece.

81    BRHS was aware that Latia and Octavia complained to about BRHS's overtime practices.

82    BRHS terminated Latia and Octavia because they complained about BRHS's overtime practices.

## FIFTH CAUSE OF ACTION
### Sex Discrimination
*Title VII of the Civil rights Act of 1964, 42 U.S.C. § 2000e et seq.*

83    Octavia and Latia are lesbians.

84    BRHS was aware of Octavia and Latia's sexual orientation.

85    Octavia and Latia were terminated.

86    There was a causal connection between Octavia and Latia's sexual orientation and their termination.

87    BRHS has at least fifteen employees.

## PRAYER FOR PUNITIVE DAMAGES

88    As to Octavia and Latia's claims under federal law, BRHS is liable for compensatory damages and at least one of the following factors was present and related to the conduct for which it is liable:

    88.1    Malice;

    88.2    An evil motive; and/or

    88.3    Callous indifference to a federally protected right.

89    BRHS participated in and/or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

## REQUEST FOR JURY TRIAL

90    Plaintiff requests a trial by jury on all issues so triable.

**WHEREFORE**, the Plaintiff respectfully requests this Court that it:

1    Enter judgment for Octavia and Latia against BRHS on all causes of action contained herein;

2    Award Octavia and Latia damages, including punitive damages, in an amount to be determined at trial;

3    Tax the costs of this action against BRHS and award Octavia and Latia reasonable attorney fees as permitted by law, and;

4    Grant such other and further relief as the court deems just and proper.

*Respectfully submitted on this, the 19th day of February, 2018.*

/s/ **WILSON F. FONG**
*Attorney for the Plaintiffs*
NC State Bar No. 50708
HENSEL LAW, PLLC
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
will.fong@hensellaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2018, I electronically filed the foregoing Complaint and Request for Jury Trial with the Clerk of Court using the CM/ECF system, and upon receipt of Summons from the Clerk, will serve all parties to this matter via US Mail, Certified, Return Receipt to:

>Blue Ridge Health Services, Inc.
>7-F Dundas Circle
>Greensboro, NC 27407
>*Defendant*

>/s/ WILSON F. FONG
>*Attorney for the Plaintiffs*
>NC State Bar No. 50708
>HENSEL LAW, PLLC
>Post Office Box 39270
>Greensboro, North Carolina 27438
>Phone: (336) 218-6466
>Fax: (336) 218-6467
>will.fong@hensellaw.com